## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-22-428-SLP |
| | ) | |
| TYLER DON WATKINS, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

Before the Court is Defendant's Motion to Suppress and Dismiss [Doc. No. 24]. The Government has filed its Response [Doc. No. 27]. For the reasons that follow, Defendant's Motion is DENIED.

## I.   **Background**

Defendant, Tyler Don Watkins (Mr. Watkins), is charged in a four-count Indictment as follows: Count 1 -- Drug User In Possession of Firearms, in violation of 18 U.S.C. § 922(g)(3); Count 2 -- Possession of Marijuana with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1); Count 3 -- Maintaining a Drug-Involved Premise, in violation of 21 U.S.C. § 856(a)(1); and Count 4 -- Possession of Firearms in Furtherance of a Drug-Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A).

On August 25, 2022, Brandon Myers, an officer with the Payne County Sheriff's Office, submitted a Search Warrant Affidavit [Doc. No. 24-1] (Affidavit) to a Payne County district judge to obtain a warrant to search Mr. Watkins' property in Cushing, Payne County, Oklahoma. The district judge issued the warrant and upon execution of the

warrant, law enforcement seized multiple firearms, ammunition, marijuana and other items.  *See* Search Warrant Return [Doc. No. 24-2].  Mr. Watkins moves to suppress all evidence seized, contending that the Affidavit was not supported by probable cause.

In the Affidavit, Officer Myers chronicled the events underlying the factual basis for the warrant.  The Court sets forth the relevant events as set forth in the Affidavit.[1]

**June 2020 Stolen Gun Incident –
Payne County / Lincoln County, Oklahoma**

In June, 2020, the Perkins police department reported that Mr. Watkins was searching on the side of the road for a gun that his cousin had allegedly thrown out the window of a vehicle.  Aff. at 3.  Mr. Watkins told police that the gun was a "Ruger .380 with a pink slide."  *Id*.  Later that day, police were dispatched to a gun found within the city limits of Perkins and determined that the found gun had been reported stolen out of Lincoln County.  The gun was a Ruger .22 pistol with gray grip.  *Id.*

---

[1] Mr. Watkins did not request an evidentiary hearing and the Court finds, in the exercise of discretion, that an evidentiary hearing is not warranted.  *See United States v. Glass*, 128 F.3d 1398, 1408–09 (10th Cir. 1997) ("[A]n evidentiary hearing is only required when the motion to suppress raises factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue."); *United States v. Pettigrew*, 468 F.3d 626, 638 (10th Cir. 2006) (rejecting the defendant's argument that an evidentiary hearing was necessary where the "Government conceded the facts as related by [the defendant]").  The parties do not dispute the facts as stated in Officer Myers' Affidavit but the legal significance of those facts.  Moreover, "where the judge granting the warrant considered only a supporting affidavit in issuing a warrant, the reviewing court likewise determines the existence of probable cause for the warrant exclusively from the 'four corners of the sworn affidavit.'"  *United States v. Royce*, No. 22-CR-163-JFH, 2023 WL 253136 at *2 (N.D. Okla. Jan. 18, 2023) (quoting *United States v. Knox*, 883 F.3d 1262, 1272 (10th Cir. 2018)); *see also United States v. Beck*, 139 F. App'x 950, 954 (10th Cir. 2005).  Indeed, both parties' arguments are limited to the statements within the four corners of the Affidavit.  Thus, a hearing would not be helpful to the determination of probable cause under the circumstances of this case.

### April 2021 Pointing a Firearm Incident –
### Payne County / Creek County, Oklahoma

In April 2021, the Drumright Police Department received a call that Mr. Watkins was pointing a firearm at residents.  *Id*.  The Affidavit is unclear as to the location of this incident, only referring to law enforcement's arrival at a "parking lot."  *Id*. at 4.  Law enforcement contacted four individuals, including Sterling Winslow.  Mr. Winslow told law enforcement that Mr. Watkins "had been sitting in a blue Hyundai Sonata in the parking lot."  *Id*.  Mr. Watkins "got out of his vehicle and approached Winslow in his pickup truck and asked him to come to his vehicle."  *Id*.  When Mr. Winslow approached Mr. Watkins' vehicle, he observed Mr. Watkins "pointing a small revolver at him from under his arm."  *Id*.  Mr. Winslow fled.  *Id*.

A minor, R.D., another individual interviewed by law enforcement, was walking to a mailbox and "observed [Mr. Watkins] following Winslow with the pistol, passing [R.D.]."  *Id*.  R.D. then ran to her residence and told her father, Clayton Dennis.  *Id*.  Dennis "ran up to the vehicle, yelling, and observed [Mr. Watkins] pointing a silver revolver at him."  *Id*.  Dennis went to retrieve a baseball bat from his house and when he exited his residence, observed Mr. Watkins leaving the area in his vehicle.  *Id*.  Mr. Watkins was driving a blue Hyundai Sonata.

The following day, on April 18, 2021, the Drumright Police Department served a search warrant on Mr. Watkins' residence in Drumright, Creek County.  *Id*.  Upon execution of the warrant, law enforcement located the following items: "A Black AR-15 rifle with no serial number, a .22 caliber rifle S/N 71564763, five bags of a green leafy

substance that later field tested positive as marijuana, a smoking pipe, firearm accessories, and an assortment of ammunition in a variety of calibers." *Id.* Mr. Watkins arrived at his residence during the search and was arrested. He was driving a blue Hyundai. *Id.* Upon searching Mr. Watkins's person, law enforcement located a capped syringe in his left pocket. *Id.* at 5. Law enforcement also searched Mr. Watkins's vehicle and located "a .380 derringer loaded with two rounds S/N CT231891, a bag of green leafy substance that later field tested positive for marijuana and a .357 revolver loaded with five rounds S/N DMA7075." *Id.*

### October 2021 Stop of Defendant
### Leaving Abandoned Grow Area – Payne County

Approximately six months later in October 2021, Mr. Watkins was stopped by Payne County law enforcement as Mr. Watkins was leaving an "abandoned marijuana grow facility." *Id.* At that time Mr. Watkins had in his possession a Ruger LCP .380 caliber pistol S/N 372161101, marijuana and syringes. *Id.*

### January 2022 Stolen Trailer Incident – Payne County

Next, in January 2022, Officer Myers received a dispatch to be on the lookout for a late model Chevrolet pickup truck with a toolbox and green ladder in the bed because it had been identified as having been involved in a just-stolen trailer incident near Agra, Oklahoma.[2] *Id.* Officer Myers found the pickup truck and trailer at Mr. Watkins's residence in Cushing, Oklahoma. When Officer Myers pulled into the drive of the

---

[2] The City of Agra is located in Lincoln County, Oklahoma.

residence, two subjects were standing outside the truck.  *Id*.  As Officer Myers continued to pull into the drive, one of the subjects walked away from the truck.  The truck then began pulling out.  Officer Myers attempted to stop the truck but the driver took off in the truck and a pursuit ensued.  The driver, later identified as Nicholas Worden, eventually lost control of the truck and was taken into custody.  *Id*.

On the day of the pursuit, law enforcement attempted to contact Mr. Watkins at his residence.  They talked to Mr. Watkins wife.  She said Mr. Watkins had been at the residence, but had just left.  *Id*.

Just after the pursuit, Officer Myers received a call about drugs found in a ditch along the side of the same road as that where the pursuit had taken place.  *Id*.  Officer Myers recovered a zipper bag containing syringes and heroin.  Mr. Worden admitted that he was a heroin addict.  *Id*.  Ammunition was found in Mr. Worden's truck.  *Id*.

Federal charges were brought against Mr. Worden for the ammunition.  ATF Special Agent Brian Anderson interviewed Mr. Worden a few days after he was arrested for the pursuit.  Mr. Worden told Agent Anderson that he had obtained guns from Mr. Watkins. *Id*.

### July 2022 Interview of Cooperating Defendant by ATF Special Agent Anderson

In July 2022, ATF Special Agent Anderson interviewed a Cooperating Defendant (CD) in a firearm and drug case he had investigated.  *Id*.  When Agent Anderson asked the

CD about the firearm found in the trailer, the CD told him that Tyler "Watson"[3] "had left the firearm at the trailer and that it had been there for approximately one (1) day prior to the search warrant." *Id*.[4]  He said that Watson was "approximately 30 to 35 years of age, lived in Agra Oklahoma, and was a known gun and narcotics dealer."  The CD was not sure whether Watson had ever been to prison but said that he "bragged about stealing from the police and was possibly related to an officer."  *Id*.  The CD said that all the ammunition that was recovered from the trailer belonged to him and that Watson had traded the ammunition to CD for narcotics.  *Id*. at 6.

**August 2022 Interview of Confidential Reliable Source
by Affiant Officer Myers**

In August 2022, Officer Myers spoke with a "confidential reliable source" (CS). The CS told Officer Myers that on July 27, 2022 he was at Mr. Watkins's residence near Agra and observed an "arsenal of firearms."  *Id*. at 6.  The CS said the firearms were in Mr. Watkins's room and hidden in a camper parked just outside of the residence.  The CS also told Officer Myers that he observed methamphetamine and marijuana.   The CS said that Mr. Watkins "is a thief" and "fences stolen property, stolen guns and deals drugs."  *Id*.

---

[3] The CD referred to Defendant as "Tyler Watson."  Officer Myers states in his Affidavit that "[w]ith the information provided we have determined that the cooperating defendant was referring to Tyler Watkins not Tyler Watson."  *Id*.

[4] The Affidavit's reference to the "trailer" fails to identify where the trailer was located or to whom it belonged.  Similarly, the Affidavit's reference to the "search warrant" is unclear as to location and ownership issues.

As a final matter, Officer Myers stated in his Affidavit that Mr. Watkins "was charged and received a deferred sentence in Oklahoma County, case CF-2012-518 for Larceny of Merchandise from a Retailer and Grand Larceny." *Id.*

Officer Myers concluded his Affidavit stating as follows:

> In totality, the information from prior investigations outlined in this affidavit corroborates the information provided to me from a confidential, reliable source and the information from the cooperating defendant to Agent Anderson that Tyler has been and still is involved in criminal activity such as stolen property, gun dealing, possessing and selling drugs, and evidence of such will be located at Tyler's residence at . . . Cushing, Oklahoma, Payne County.

*Id.*

## II.   <u>Discussion</u>

Mr. Watkins contends Officer Myers' Affidavit does not provide probable cause to support a search of his property.[5]  The property subject to the search warrant includes the residence which is a mobile home and its "add-ons" and all outbuildings and vehicles.  *See* Aff. [Doc. No. 24-1] at 2.  In challenging the search, Mr. Watkins focuses his argument on the search of his "house."   Specifically, he argues that "only one informant gave

---

[5] The Government does not contest that Mr. Watkins has standing to raise his Fourth Amendment challenge.  Instead, the Government argues that by challenging the search warrant, Mr. Watkins appears to concede that he resided or otherwise stayed at the property that was searched.  *See* Pl.'s Resp. at 7, n. 3.  Because neither party has briefed the issue of standing, the Court does not address it.  *Compare United States v. Lopez-Merida*, 466 F. App'x 731, 735 (10th Cir. 2012) ("[W]e can assume that [defendant] has standing [to challenge Fourth Amendment issues], because he loses on the merits."); *see also United States v. Ingram*, No. CR-15-93-M, 2016 WL 1457887, at *3, n.5 (W.D. Okla. Apr. 12, 2016) (the court noting "as the government did in its response, that [the defendant] had seemingly conceded he resided at the Residence [searched] b[y] challenging the search warrant in [his] motion [to suppress].  If [the defendant] did not reside at the Residence he would not have standing to challenge the search warrant.").

information specific to Mr. Watkin's house and illegal activity occurring therein."  Mot. at 5.  Mr. Watkins contends that the Affidavit "fails to establish the credibility and reliability of the informant."  *Id*. at 2.  According to Mr. Watkins, his own "previous law enforcement contacts and cases are insufficient to cure this deficiency."  *Id*.  Mr. Watkins contends that the informant's statements "should have been further corroborated by other law enforcement tactics such as surveillance, electronic monitoring or control buys."  *Id*. at 5.

In Response, the Government argues that Mr. Watkins "had a pattern of illegal gun and drug activities over the roughly two years leading up to the execution of the warrant on August 31, 2022."  Resp. at 4.  The Government argues the Affidavit contains information demonstrating "a clear picture of Watkins as engaged in the ongoing distribution of drugs and trading of stolen firearms."  *Id*. at 5.  The Government further argues that the CD's statements were sufficiently corroborated by Mr. Worden, an identified informer and a reliable source, because Mr. Worden "painted a similar picture of Watkins' firearm and drug dealings."  *Id*. at 6.

As to evidence linking Mr. Watkins to the property searched, the Government points to Officer Myers' Affidavit in which he identifies the property as Mr. Watkins's known residence, states that he observed a stolen trailer at the property and later went to the property and spoke to Mr. Watkins's wife who relayed that Mr. Watkins had "been there but had just left."  Mot. at 7 (citing Aff. at 4).  The Government additionally points to information relayed by the CS that he had seen contraband at Mr. Watkins's residence on July 27, 2002 and described the residence as located "northwest of Eseco Road on Hwy 18 near Agra."  *Id*. (citing Aff. at 5; Aerial photo [Doc. No. 27-2]).

Alternatively, the Government further argues that even if the Court were to find a lack of probable cause, no evidence should be suppressed because the officers conducting the search acted in good faith and in reliance on the warrant.

### A.    The Search Warrant Was Supported by Probable Cause

"An affidavit supports probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Moses*, 965 F.3d 1106, 1113 (10th Cir. 2020) (internal quotation marks and citation omitted). "A 'fair probability,' is not an airtight guarantee; nor is it 'proof that something is more likely true than false.'" *United States v. Jenkins*, 819 F. App'x 651, 658 (10th Cir. 2020) (quoting *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014)). "Rather, a 'fair probability,' if placed on a hierarchy, ranks somewhere between a naked suspicion and a preponderance of the evidence.'" *Id.* (citing *Denson*, 775 F.3d at 1217).

"A district court reviewing the probable cause for a search warrant puts itself in the shoes of the warrant's issuing jurist and gives substantial deference to the prior decision." *Moses*, 965 F.3d at 1112. "A reviewing court is to interpret search warrant affidavits in a common sense and realistic fashion." *United States v. Grimmett*, 439 F.3d 1263, 1270 (10th Cir. 2006). "The Fourth Amendment's strong preference for warrants compels [the court] to resolve 'doubtful or marginal cases' by deferring to [the issuing] judge's determination of probable cause." *United States v. Biglow*, 562 F.3d 1272, 1282 (10th Cir. 2009) (citing *Massachusetts v. Upton*, 466 U.S. 727, 728, 734 (1984)).

"Moreover, the warrant application must establish a nexus between the contraband to be seized or suspected criminal activity and the place to be searched." *United States v. Alqahtani*, -- F.4th --, 2023 WL 4095757 at *3 (10th Cir. June 21, 2023) (cleaned up); *see also United States v. Windom*, No. 22-1077, 2023 WL 2136499, at *3 (10th Cir. Feb. 21, 2023), *cert. denied,* No. 22-7554, 2023 WL 3937723 (U.S. June 12, 2023) (citing *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005)).  The affiant need not have personal knowledge that illegal activity is taking place in the area to be searched to establish nexus.  *Windom*, 2023 WL 2136499 at *3 (citing *Biglow*, 562 F.3d at 1279).  Rather, a sufficient nexus exists where an affidavit describes circumstances which would warrant "a person of reasonable caution" to believe that the articles sought are at a particular place.  *Id.*

## 1.    Credibility and reliability of the informant

Mr. Watkins argues that "[t]he affidavit does not establish the credibility of the informant."  Def.'s Mot. at 2.  He contends that the "confidential informant" was not previously known to law enforcement and was only testifying to get himself out of trouble in his own case."  Def.'s Mot. at 2.  Mr. Watkins further argues that "only one informant gave information specific to Mr. Watkins' house and illegal activity occurring therein." He contends this information was not sufficiently corroborated and that "much of what the attesting officer states is simply not illegal and not related to the sale of narcotics or firearms at this particular residence."  *Id*. at 5.  And he argues that "[t]he very vague statements by another unnamed person under indictment should no be used to bolster 'CS' statements."  *Id.*

In this case, there is both a Cooperating Defendant (CD) and a Confidential Source (CS). Mr. Watkins' challenge to the credibility and reliability of "the informant" is directed to the CS. His reference to the "unnamed person under indictment" is directed to the CD.

As detailed above, the affiant, Officer Myers, spoke with the CS on August 19, 2022. The CS identified the location of Mr. Watkins residence as "northwest of Eseco Road on Hwy 18 near Agra" and told Officer Myers that he had observed "an arsenal of firearms" and drugs at the residence, describing where the firearms were located at the residence. He also told Officer Myers that Mr. Watkins "fences stolen property, stolen drugs, and deals drugs." *See* Aff. [Doc. No. 24-1] at 6. The Court finds the information provided by the CS was sufficiently corroborated.

First, the statements of the CS are corroborated by the CD. *See United States v. Wright*, 350 F. App'x 243, 247 (10th Cir. 2009) ("A tip from a second (or third or fourth) informant can serve to reasonably corroborate the first informant's statements."). The CD provided information as to Mr. Watkins age (approximately 30-35 years old), that he lived in Agra, Oklahoma and that he was a known gun and narcotics dealer. He also linked Mr. Watkins to a firearm found during the execution of a search of a trailer.

Second, the statements of both the CS and the CD are sufficiently corroborated by other evidence. As to Mr. Watkins' age, the record shows he was born in 1993 and at the time of the search, therefore, he was approximately 30 years old. The Affidavit identifies several places where Mr. Watkins is alleged to have resided. In April 2021, a search warrant was executed on Mr. Watkins' residence in Drumright, Oklahoma. In January 2022, the Affidavit identifies Mr. Watkins' residence as Cushing Oklahoma. And the CD

11

stated that Mr. Watkins lived in Agra Oklahoma.  All of these towns are adjacent to one another and short distances apart.[6]

The Affidavit identifies several instances where guns and drugs were found either on Mr. Watkins' person, at his residence or in his vehicle.[7]  For instance, in April 2021, a search of Mr. Watkins' residence in Drumright, Oklahoma located firearms, ammunition, marijuana and drug paraphernalia.  And a search of his person and car at that same time located firearms and marijuana.  In that same month, witnesses reported Mr. Watkins pointing a firearm at an individual in Drumright, Oklahoma.  Moreover, the known informant, Mr. Worden, told ATF Special Agent Anderson that he had obtained guns from Mr. Watkins.

The credibility of a witness is bolstered "when his or her information is corroborated by other information."  *Alqahtani*, 2023 WL 4095757 at *4 (internal quotation marks and citation omitted); *see also United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) ("When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.").  Additionally, "a witness is more credible when he or she has 'personally witnessed' the event."  *Alqahtani*, 2023 WL 4095757 at *4.  As detailed, the statement of the CS is sufficiently corroborated, thereby bolstering the credibility of the CS.  Both the CS and the CD provided information that

---

[6] For example, the driving distance from Cushing, Oklahoma to Agra, Oklahoma is approximately 12 miles.  *See* https://www.google.com/maps/dir/cushing+oklahoma/agra+oklahoma/.

[7] Mr. Watkins concedes that Officer Myers "corroborates this information using Mr. Watkins' previous law enforcement contacts and cases" but directs his challenge to the purported lack of any nexus between this information and the "particular residence" searched.  *See* Def.'s Mot. at 5.

each had personally witnessed. And the information received from the CS and the CD were corroborated by other information. Finally, a "law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal activity will be found in the place to be searched, is entitled to consideration" in the Court's determination of probable cause. *United States v. Mathis*, 357 F.3d 1200, 1205 (10th Cir. 2004) (citations omitted). Here, Officer Myers' expertise in drug, firearms and property crimes as well as his own involvement in the investigation of Mr. Watkins' criminal activities, provides a substantial basis upon which the issuing district judge could find that Mr. Watkins was engaged in the unlawful distribution of drugs and possession of firearms. In sum, considering the totality of circumstances, the record demonstrates that the CS's statements were sufficiently credible and reliable.

### 2. Nexus between the sale of narcotics or firearms and the residence searched

To the extent Mr. Watkins argues that the Affidavit does not provide a sufficient nexus between the evidence seized and his house, the Court rejects the argument.[8] "Personal knowledge of illegal activity taking place in the area to be searched is not required to establish nexus." *Windom*, 2023 WL 2136499, at *3 (citing *Biglow*, 562 F.3d at 1279). Instead, "a sufficient nexus is established once an affidavit describes

---

[8] Mr. Watkins references the nexus requirement, *see* Def.'s Mot. at 3, but does not expressly argue that the nexus requirement has not been met in this case. Instead, the focus of Mr. Watkin's argument focuses on whether the CS's statements were sufficiently corroborated.

circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Id.* (cleaned up).

The Affidavit establishes that on January 20, 2022, the affiant, Officer Myers, identified the property subject to the search as Mr. Watkins' residence.  Law enforcement observed a stolen trailer at the residence.  On that date, "deputies attempted to contact [Mr. Watkins] at his residence." *See* Aff. [Doc. No. 24-1] at 5.  "They talked to his wife, who told them he had been there but had just left." *Id.*

The Affidavit further establishes that the CS told Officer Myers that he was present at Mr. Watkin's residence "located northwest of Eseco Road on Hwy 18 near Agra." *Id.* at 6.  The CS observed "an arsenal of firearms" in Mr. Watkins room and hidden in a camper just outside the residence. *Id.*  He also observed methamphetamine and marijuana. *Id.*  Based on this information, together with the other evidence of Mr. Watkins' gun and drug activity, a reasonable person could believe that Mr. Watkins kept guns and drugs in his house at the property searched.

### B.    Good Faith Exception

The Government argues that even if the Affidavit were not supported by sufficient probable cause, the evidence should not be suppressed because the good-faith exception to the exclusionary rule applies. *See United States v. Leon*, 468 U.S. 897, 922 (1984).  Under the good-faith exception, "evidence seized pursuant to [a] warrant need not be suppressed if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral [issuing judge]." *United States v. DeVargas*, 64 F.4th 1148, 1164 (10th Cir. 2023) (internal quotation marks and citation omitted).  The court presumes

that an officer acts in objective good faith when relying upon a warrant because it is the responsibility of the issuing judge "to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.* at 1165 (internal quotation marks and citation omitted).

But the presumption of good faith is not absolute. *Id.* There are four situations in which an officer's reliance on a warrant is not reasonable: "(1) when the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth; (2) when the issuing magistrate wholly abandon[s her] judicial role; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid. *Id.* (internal quotation marks and citation omitted).

Mr. Watkins does not argue the good-faith exception does not apply. Instead, the Government raises the issue. The Government does not address any of the four situations in which an officer's reliance on a warrant is not reasonable. Instead, the Government focuses on the presumption of good faith afforded to an officer's reliance upon a search warrant.

Because the Court finds the warrant is supported by probable cause, the Court need not address application of the good-faith exception. Nonetheless, on the record presented, the Court finds no reason this exception should not apply. The only situation that would render the good-faith exception inapplicable that is potentially at play is whether the

15

warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. This is a "high standard" and an officer's reliance must not merely be "misplaced" but "wholly unwarranted." *United States v. Knox*, 883 F.3d 1262, 1274 (10th Cir. 2018) (citations omitted). An officer's reliance is wholly unwarranted "only if the affidavit submitted in support of the warrant is *devoid* of factual support." *Id.* (emphasis in original, citation omitted). But, for the reasons previously set forth, the Court finds the Affidavit is not devoid of factual support. Accordingly, the good-faith exception to the warrant requirement precludes suppression of the evidence obtained as a result of the search.

## III.   <u>Conclusion</u>

For the reasons set forth Defendant's Motion to Suppress and Dismiss [Doc. No. 24] is DENIED.

IT IS SO ORDERED this 11th day of July, 2023.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

16